HUMMEL, Plaintiff-Appellant v COLUMBUS BASEBALL CLUB, INC., Defendant-Appellee.

Ohio Appeals, 2nd District, Franklin County.

No. 3507. Decided January 6th, 1943.

H. S. Krakoff, Columbus, Russ Bothwell, Columbus, for plaintiff-appellant.

Hedges, Hoover & Tingley, and John Benson, Columbus, for defendant-appellee.

## OPINION

By GEIGER, PJ.

This matter is before this Court upon appeal on questions of law from an order of the Court of Common Pleas. The case was presented to the Court upon a motion by the defendant for judgment upon the pleadings, being the petition, the answer and the reply. The Court decreed that the motion of the defendant be sustained and judgment entered in favor of the defendant.

Notice of appeal was given from this final judgment upon questions of law.

The petition recites that the Columbus Baseball Club, Inc., is a corporation under the laws of Ohio with its principal place of business in Columbus, and that on the evening of the 13th day of August, 1941, it was engaged in the business of presenting a public exhibition of professional baseball at the Red Bird Stadium where baseball was played by professional clubs, playing in accordance with their schedule; that said stadium for that night was used for the purpose of the exhibition of baseball under the management of

the defendant; that spectators were required to pay an admission fee and that upon said evening the plaintiff occupied a seat in the fifth row of the left field bleachers; that during said game a player batted a ball into the spectators' part of the stadium which struck the plaintiff in the right side of his abdomen causing injuries of which he complains. It is alleged that the injuries to plaintiff were the result of and proximately caused by defendant's carelessness and negligence in the following particulars:

1. That the defendant negligently failed to protect spectators in that part of the stadium where plaintiff was seated, by adequate screens.

2. That the defendant negligently failed to provide protection from the blinding floodlights so that plaintiff might have seen the ball coming and have averted the danger of injuries.

3. That the defendant negligently failed to have the floodlights placed in such a position in the stadium as to throw light upon the ball batted in the direction where the plaintiff was seated, so that the plaintiff might have seen the ball coming and averted the injuries.

Plaintiff asks judgment for $10,100.00

Defendant answered alleging three defenses:

The first was an admission of certain formal matters and a general denial of those facts not specifically admitted.

The second defense was that there are certain natural perils and dangers incident to an exhibition of professional baseball which are not within the powers of the players to control; that spectators, unless they take seats in the protected area of the grandstand, subject themselves to and assume certain dangers and perils of the plays; that for the accommodation of those patrons who seek to be protected the defendant, prior to the date in question, erected a protective screen in front of certain sections in the stadium, which screens were in place on the date in question and available to the plaintiff; that the defendant also caters to those of its patrons who object to a screen and who prefer to occupy an exposed seat that they may have a clear and unobstructed view of the game, and to accommodate such patrons the defendant keeps certain sections of its grandstand and bleachers unscreened.

The second defense alleges that if the plaintiff was injured as alleged, he elected to take a seat in the unscreened bleachers where he knew, or in the exercise of ordinary care, should have known that he would be exposed to perils naturally arising as an incident to the game; that by so electing to occupy an unscreened seat plaintiff voluntarily exposed himself to said perils and assumed the risk resulting therefrom.

As a third defense, it is alleged that if the plaintiff was injured by reason of any negligence of the defendant he was guilty of the negligence which was the proximate cause of the alleged injuries in that he had voluntarily elected to take a seat in the

unscreened bleachers where he knew or in the exercise of ordinary care should have known that he would be constantly exposed to the natural perils incident to the exhibition, and negligently failed to watch the ball while it was in action and plaintiff failed to avoid the batted ball.

To this answer the plaintiff replies, denying that he was in any manner negligent, or that he contributed to said injuries.

The court below in passing upon the motion held that the petition sets forth that during the game a player batted a ball which struck plaintiff; that the distinguishing feature from the general rule approved in **Ball Company v Eno, 112 Oh St 175**, is not present in this case. The court states that it is sought to distinguish the rule by the fact that it was a night game played under artificial lights, but states that certainly the plaintiff knew that he was attending a night game and knew of the lighting conditions. He took his seat knowing of the absence of a screen. "The court is not of the opinion that the rule is any different in night games from those which prevail in day games." The motion to dismiss was sustained.

There is but one assignment of error, that the trial court was in error in sustaining the motion for judgment for defendant on the pleadings and holding that plaintiff assumed the risk of defendant's negligent operation of its lights as pleaded in the petition.

The question presented in this case is an interesting one, and novel in that, so far as counsel are able to discover, no decision has yet been rendered in a court of review, touching a baseball game played under the comparatively recent device of floodlights. There have been a number of cases in Ohio touching upon the liability of the owner of a ball park for damages claimed as a result of injuries during the playing of a game.

The most enlightening case is that of **Cincinnati Baseball Club Co. v Eno, 112 Oh St 175**. In that case it is held:

(1) One who invites others to come upon his premises must exercise ordinary care to guard them against danger, and render the premises reasonably safe for the invitees.

(2) Whether the management of a baseball club company in permitting practice by its baseball team in close proximity to the unscreened section of the grand stand between the two games of a "double header" is guilty of negligence, or whether a spectator sitting in the unscreened portion of the grand stand at the time of the practicing is guilty of contributory negligence, is a question of fact for the jury. The decision is by Allen, Judge, and it should be carefully read. The importance of the decision is that the Supreme Court has placed its stamp of approval upon certain principles which are enunciated in cases cited by Allen, J. The general principles controlling actions in which the plaintiff seeks to recover appear in the several cases cited and quoted from, but the court holds that in the case then being considered the question as to whether or not the plaintiff was guilty of contributory negligence

was one for the jury, and that it was error to dismiss the plaintiff's petition on the ground of contributory negligence. We might briefly cite the substance of the cases cited by the Supreme Court with the comment of Allen, J.

In Crane v Baseball Company, 168 Mo. App. 301, 153 S. W. 1076, the plaintiff had purchased a ticket entitling him to a seat in the grandstand protected by a wire netting, but instead of going there he voluntarily chose to take a seat that was unprotected. During the progress of the game he was struck by a foul ball and injured and sued for damages, alleging negligence in not screening the whole of the grandstand. The trial court held that as a matter of law plaintiff was not entitled to recover, and the court of last resort held that contributory negligence was apparent and it was further held that when one attending a baseball game is offered a choice of two positions, one of which is less safe than the other, he can not be said to be in the exercise of reasonable care if, with full knowledge of the risk and danger, he chooses the more dangerous place.

In Wells v Baseball Assn., 122 Minn., 327, 142 N. W. 706, the plaintiff was struck by a fly ball hit by one of the players. She alleged that the park owners had negligently constructed a screen between the players and the spectators of insufficient size to furnish protection. At the time of the injury plaintiff was sitting in an exposed position outside the screen. The court held in substance that one who maintains grounds to which the public is invited is not an insurer against the dangers incident to witnessing the game, but is required to use the care and precaution of ordinary prudent persons to protect the spectators. The court held the persons who know and appreciate the danger from thrown or batted balls assume the risk, and they can not claim that the management is guilty of negligence when a choice is given between a seat in the open and one behind a screen.

In Kavafain v Seattle Baseball Assn., 177 P., 776, 181 F. 679, the charge was made by an injured spectator that the defendant was guilty of negligence in failing to maintain a screen in front of the seat which he occupied. The court on the first hearing held that it was a question for a jury, whether a spectator was guilty of contributory negligence or assumed the risk when taking an unprotected seat. On rehearing the court held that a spectator at a ball game, struck by a foul ball, who voluntarily took and retained a seat in the unscreened section of the grand stand when there were a great number of protected vacant seats, assumes the risk or is guilty of contributory negligence, precluding a recovery.

The Ohio Supreme Court in the **Eno case** comments that the concensus of the above opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown with swiftness and that they are liable to be thrown or batted outside the line of the diamond, and that spectators in position which may be reached by such balls assume the risk thereof. The Ohio

Court pointed out that as a general rule, so far as screening the grand stand is concerned, due care on the part of the management does not require all of the seats be screened in, and that the management performs its duty when it provides screened seats and gives spectators the opportunity of occupying them. The court states, p. 181:

"We concur in the soundness of the views expressed in the above cases with regard to injuries incurred by balls thrown or batted during the course of a baseball game. The plaintiff below urged that the defendant was negligent in not protecting her by screening that part of the grandstand in which she sat, and if this were the only allegation of negligence, or if it were the only allegation of negligence upon which evidence was given, we would be compelled to reverse the judgment of the Court of Appeals (which was to the effect that the question of negligence was for the determination of a jury)."

The court then points out that the case then being considered presents a situation materially different from the cited cases, both in the liability of the defendant and as to the contributory negligence; that the question presented an addition to the allegation as to the defendant's negligent failure to screen the grandstand alleges that the injury occurred during intermission, and that the defendant was negligent in permitting the players to bat balls from the point from which the ball which caused the injury was batted. No such allegation appears to have been made by the plaintiff in any of the above cited cases. The court then points out the fact that the question was whether the baseball company had performed its duty of protecting the patrons against injury by allowing players in practice so near the grandstand in an intermission game. The court points out the difference between the cases cited by it and the case then being determined, related to the fact that during the regular game a practice game was permitted so near the grandstand as to subject the spectators to possible injury. The court holds, "in such a situation the reason advanced for the principal rule does not obtain." The court states, p. 185:

"We do not think that a court should say as a matter of law that a spectator assumes the risk of every batting or throwing of a ball permitted upon the field by the management, no matter how near the grandstand, no matter how many groups are engaged in practice, and no matter whether the batting or throwing is a part of the game itself."

The scintilla rule was in force at the time this opinion was rendered and the court holds that there was at least a scintilla of

evidence in the record tending to show that the management had not performed its duty.

A motion by defendant for a directed verdict, made at the close of the plaintiff's evidence, raises a question as to the legal sufficiency of the evidence adduced to go to the jury, and should be overruled if the evidence is such that reasonable minds ▇ may differ as to the inference to be drawn therefrom. The same rule is applicable when a motion is interposed for a judgment upon the pleadings.

Another case of interest involving the right of recovery for injuries suffered at a baseball game is that of **Ivory, Appellee, v Cincinnati Baseball Club Company, Appellant, 62 Oh Ap ⁵14.** It was there held that a patron at a baseball game who was thoroughly familiar with the way the game is played and with the arrangement of seats, who purchased a ticket for a seat in the portion of the grandstand not protected by screening and was injured when struck by a "foul", can not recover for such injuries where the alleged negligence was the failure to screen the portion of the grandstand.

Counsel for plaintiff-appellant asserts that the only question presented to this court is, did the plaintiff-appellant assume the risk of attending a night baseball game, and he states that the placing of lights is the basis of negligence which does away with the assumption of risk theory and points out that the third specification of negligence alleges failure on the part of the defendant-appellee to place the lights in such position that the plaintiff-appellant could have seen the flight of the ball. It is urged that the negligence in placing of lights is the gist of the case and that the defendant exercised full control over this. Counsel points out the fact that all the cases cited had reference to day baseball where a person has more than an even chance to protect himself from foul balls. Counsel admits that the plaintiff assumed the risk such as would have protected the company in the event of the day time game, but that in the case at bar, due to the fact that it was a night game the plaintiff did not assume the perils, and counsel asserts that plaintiff should have his opportunity to present his evidence to the effect that a type of lights was being used by defendant that were known to have created the hazard that resulted in plaintiff's injury.

We might comment on numerous cases cited, but we are of the opinon that the crucial question is whether or not there is any difference in principle between the rights of an injured plaintiff in a daylight game from those existing when the game is played under artificial light. In a daylight game a plaintiff assumes the risk incident to the game and can not claim that the company was negligent in not furnishing screens for that portion of the bleachers that may have been occupied by the injured spectator. We do not conceive that there is any difference when the game is played

by artificial light. The plaintiff was apprised of the fact that the risk of such games was greater than the risk incident to daylight games, but that very fact should not permit him to avoid the consequence of his own negligence in not seeking a protected position, which was available to him for an increased fee. If the risk was greater due to the fact that it was a night game played under artificial lights by the same token the plaintiff was under greater obligation to protect himself by seeking a position of safety behind screens. Plaintiff claims that the light should have been so arranged as to enable him to have seen the flight of the ball and to have thereby avoided being struck. There was no greater obligation to arrange the lights for his protection than for the protection of any other person seated in the unscreened portion of the stand. The plaintiff apparently takes the position that there was an obligation on the part of the company to so arrange the lights as to protect him at the point where he was seated without regard to the consequences such special protection for his benefit would have upon the safety of others who had sought seats in unprotected sections. The risk of a night game may or may not be greater than that of a day game, but the principles that have been expressed by our courts in reference to assumed risks touching daylight games are in our judgment applicable to the night game. The plaintiff was not compelled to attend the game at all, neither was he compelled to sit in an unprotected position, with full knowledge of the effect of lighting by floodlights. He sought an unprotected position and he thereby assumed the risk and was guilty of contributory negligence and is not entitled to recover.

There are many other cases cited by counsel which we have read, but which we feel do not militate against the position we have taken.

Judgment of the court below affirmed.

BARNES, J., concurs.

HORNBECK, J., dissenting. I am in accord with the opinion of the majority as it relates to the first and second specifications of negligence set out in the petition. I can not agree that there is not an issue of fact raised upon the third specification of negligence and the answer thereto. This allegation is to the effect that the defendant was negligent in that it failed to have the floodlights placed in such a position in the stadium as to throw light upon the ball batted in the direction in which the plaintiff was seated, so that the plaintiff might have seen the ball coming and averted the danger of injuries. This averment, in my judgment, projects a factual question that has not been specifically met by any of the cases cited.

It was the obligation of the defendant to observe the rule of law set out in the first proposition of the syllabus in the **Cincin-**

**nati Baseball Club Company v Eno, 112 Oh St 175,** that, "one who expressly or by implication invites others to come upon his premises must exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitees."

The defendant in conducting its amusement enterprise has undertaken to provide night baseball, and as a part of the project has simulated daylight and installed equipment appliances which make it possible for the players to exhibit games similar in all particulars to the daylight game. It is obvious that if players are able to carry on a baseball game with the batter facing a pitcher, throwing all types of balls, curves, swift and slow balls, if infielders and outfielders are capable of playing their respective positions and fielding swift balls batted in their direction, that the lighting system must be scientifically correct.

It follows that it is but due care that the defendant install modern equipment scientifically arranged and placed; so that the spectators as well as the players may at least have the normal protection against batted or thrown balls which would be assured if they make the proper use of their faculties. It is common knowledge that few spectators in the unscreened portion of the grandstand or bleachers are struck by batted balls, because they are able to see the oncoming ball and to avoid being struck.

If, as is alleged the lighting at the ball park was insufficient to assure the plaintiff that protection which due care on the part of the defendant would have provided, then it may be found negligent and it becomes a factual question whether or not this negligence was the proximate cause of plaintiff's injuries and whether or not he was contributorily negligent.

I appreciate that the question of proof would be difficult and it may be doubtful indeed if the plaintiff would be able to establish the averment of the third specification of negligence, but if he did, or if he made a prima facie showing to that effect, it should at least put the defendant upon proof as to the degree of care which it had employed in lighting the ball park.

**Cincinnati Baseball Club Company v Eno, supra,** is authority for the proposition that it is not a defense to a ball club against all charges of negligence to assert that it has provided a screened portion of the grandstand for spectators. There are situations where there may be liability to a spectator even though there is a screened portion behind which he may have secured a seat at an increased price.

It would be a dangerous policy for the law to pronounce a principle of immunity to ball clubs against ordinary care as related to the construction of its stands or the location or the placing of equipment which has to do with the safety of its patrons.