David M. Maytnier, Jr., by David M. Maytnier, His Father and Next Friend, Plaintiff-Appellant, v. Robert Rush, Defendant-Appellee, and Chicago National League Ball Club, Inc., a Corporation, Defendant.

David M. Maytnier, Jr., by David M. Maytnier, His Father and Next Friend, Plaintiff-Appellee, v. Chicago National League Ball Club, Inc., a Corporation, Defendant-Appellant, and Robert Rush, Defendant.

Gen. Nos. 50,780 and 50,781.

First District, Second Division.

March 6, 1967.

Rehearing denied April 5, 1967.

James A. Dooley, of Chicago, for David M. Maytnier, Jr., appellant and appellee.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Perry L. Fuller and Thomas J. Weithers, of counsel), for appellant, Chicago National League Ball Club, Inc. and appellee, Robert Rush.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is a consolidation of appeals from judgments, after the return of jury verdicts, entered in favor of plaintiff against defendant, Chicago National League Ball Club, Inc. (hereinafter referred to as defendant, Chicago Cubs) for $20,000 and in favor of defendant, Robert Rush (hereinafter referred to as defendant, Rush). General No. 50,780 is an appeal by plaintiff from the judgment for defendant Rush and General No. 50,-781 is an appeal by defendant Chicago Cubs from the judgment for the plaintiff.

On September 13, 1957, plaintiff, David M. Maytnier, Jr., purchased a ticket to a Chicago Cubs doubleheader specifically requesting a seat as close to the Cubs' dugout as possible so that he could get a better view of the players. He received and occupied a seat in the front row, approximately ten to fifteen seats to the outfield side of the Cubs' dugout. Plaintiff had been to Wrigley Field six to twelve times over the previous two to three years. He knew a protective screen was provided behind home plate and that none was so provided in the area where his seat was located.

During the sixth inning of the second game, plaintiff was struck and injured on the left side of his head by a ball thrown from the bullpen by defendant Rush. This warming up area or bullpen was located on the field of play between the third base foul line and the

grandstand at a point about midway between the Cubs dugout and the left field wall. Pitchers warming up therein would throw in approximately the same direction as would the pitcher in the game itself. Plaintiff knew of the bullpen's proximity to the grandstand, and that it was not uncommon for some warming up activity to take place there. The seat occupied by plaintiff was in such a position that it required him to look to his right to see the pitcher and batter in the game and to his left to see the bull pen activity. In just which direction plaintiff was looking when struck by the ball was much controverted.

Testimony was elicited which showed that Cub pitchers may warm up of their own volition or by the specific direction of a manager, and that a pitcher may, on occasion while warming up, experiment with a new pitch. It was proffered that defendant Rush was having a bad year and that when a pitcher is having a bad year, he attempts to correct his pitching rhythm. The warm up catcher, Gordon Massa, testified that the pitch in question went up to his left beyond his reach. Massa was six feet three inches tall.

Evidence was offered to show that there exists a substantial benefit, to be able to throw warm up pitches in the same direction as the pitcher in the game and also thus be able to examine the opposing batters as they come to bat. Testimony was also introduced to support the contention that there existed no other feasible location in Wrigley Field for such a bullpen. Defendant Rush admitted that he had thrown "wild pitches" while warming up on prior occasions.

It is defendant Rush's theory of the case in No. 50,780 that plaintiff's appeal should be dismissed for want of timeliness under the Supreme Court Rules.

It is defendant Chicago Cubs' theory of the case in No. 50,781: (1) that it was under no duty to screen off its entire park and is, as a matter of law, not liable to

340

spectators at a game, who are struck by baseballs; (2) that plaintiff assumed the risk of injury; and (3) that the trial court erred in not directing a verdict in its favor.

It is plaintiff's theory of the case in No. 50,781: (1) that defendant Chicago Cubs violated the duty an owner-occupier of premises owes to invitees present thereon by establishing and maintaining a dangerous facility in proximity to the grandstand; (2) that defendant Chicago Cubs was negligent in allowing defendant Rush to experiment with new pitches while in the bullpen; (3) that defendant Rush was negligent in throwing the ball into the grandstand; and (4) that the verdict returned for defendant Rush was against the manifest weight of the evidence.

In case No. 50,780 plaintiff appeals from a judgment entered below in favor of defendant Rush. Defendant Rush filed a motion to dismiss the appeal, (which was taken with the case) on grounds that the appeal was not perfected within the time permitted by Supreme Court Rule 35. A judgment was entered upon the verdict on January 14, 1965. Plaintiff and both defendants filed post-trial motions which were denied on April 28, 1965. Defendant Chicago Cubs filed notice of appeal 16 days thereafter on May 14, 1965, and plaintiff filed notice of appeal from the judgment in favor of defendant Rush on June 25, 1965, 58 days after the judgment had become final. Supreme Court Rule 35(1), Ill Rev Stats 1965, c 110, par 101.35(1) stated:

> "Each appellee who desires to prosecute a cross appeal from all or any part of the judgment, decision, order or decree, and each co-party who did not join in the notice of appeal but who desires to join as appellant or to prosecute a separate appeal shall, within 10 days after service upon him of notice of appeal, serve a notice upon each party or

attorney or firm of attorneys who signed the notice of appeal, and upon each appellee, person or officer entitled to receive notice of appeal, and file a copy thereof in the trial court."

It is defendant Rush's position that once defendant Chicago Cubs filed its notice of appeal 16 days after the judgment became final, it then became incumbent upon plaintiff to file his notice of cross appeal within 10 days thereafter, or within a sum total of 26 days after the judgment became final notwithstanding the general provision found in the Civil Practice Act, Ill Rev Stats 1965, c 110, par 76, allowing 60 days for the filing of notice of appeal. Plaintiff contends that as to defendant Rush, he is neither an appellee nor a coparty who did not file a separate notice of appeal within the meaning of the statute. In addition, plaintiff points out that separate judgments were entered from the verdict in the trial court. This court is of the opinion that plaintiff's reasoning, if accepted here, would operate to defeat the intent of Supreme Court Rule 35.

In case No. 50,781, we find that plaintiff entered the premises of defendant Chicago Cubs as a business invitee. Reciprocal benefits were derived as a result. Plaintiff, by accepting the public invitation held out by the defendant Chicago Cubs, was entertained by the performance of professional athletes, and defendant Chicago Cubs in consideration therefor, received pecuniary benefit.

It is well established law in this State that the owner-occupier of lands is not an insurer of the safety of invitees on his premises, but he is under a duty to exercise reasonable care for their protection. An owner-occupier's liability to an invitee for injuries not intentionally inflicted must be predicated upon negligence, and no presumption of negligence on the part of the owner-occupier arises merely by showing that an injury has been sustained by one rightfully upon the

342

premises. Altepeter v. Virgil State Bank, 345 Ill App 585, 104 NE2d 334 (1952). Moreover, this duty of reasonable care owed to an invitee does not require a complete fencing of the spectators present at a baseball game to protect them from stray baseballs. As stated in Brisson v. Minneapolis Baseball & Athletic Ass'n, 185 Minn 507, 240 NW 903 (1932):

"In our opinion they exercise the required care if they provide screen for the most dangerous part of the grandstand and for those who may be reasonably anticipated to desire protected seats, and that they need not provide such seats for an unusual crowd, such as the one in attendance at the game here involved."

 It does not necessarily follow, however, that once an owner of a ballpark has provided an adequate fenced-in area for the most dangerous part of the grandstand he has thereafter exculpated himself from further liability as defendant Chicago Cubs contends. To the contrary see Restatement of the Law of Torts, 2d, 344 (1964), which states:

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . , and by the failure of the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or
"(b) give a warning adequate to enable the. visitors to avoid the harm, or otherwise to protect them against it."

In speaking of the independent negligent acts of a third person while on the premises of the owner which result

in injury to an invitee present thereon, the court in Altepeter v. Virgil State Bank, 345 Ill App 585, 104 NE2d 334 (1952) said:

". . . no liability attaches to the latter (owner) unless the circumstances are such that liability can be predicated on the theory of the existence of a public nuisance or of a dangerous condition, known to the owner or occupant, which he failed to take reasonable precautions to alleviate." (Insert supplied.)

The court went further stating that the basis of an owner's liability for injuries to an invitee rests upon the owner's superior knowledge of the danger. Moreover, proof that the owner had actual knowledge of the dangerous condition is not a prerequisite to his liability. Reichmann v. Robertson's, Inc., 264 Ill App 537 (1932).

In Ratcliff v. San Diego Baseball Club, 27 Cal App2d 733, 81 P2d 625 (1938), the court said that the park owner would not have been carrying out its duty of ordinary care if such an accident could reasonably have been foreseen and nothing was done to protect the patrons from such possible injury. Plaintiff here clearly avers a breach of this duty owing to him in paragraph 7(a) of his fourth amended complaint at law, to wit;

". . . carelessly and negligently permitted and caused to permit and maintain the location of its bullpen at a place in the park which was dangerous to the plaintiff, situated nearby, who was watching the game."

Defendant Chicago Cubs contends that the only evidence presented by plaintiff to sustain his charges of negligence by defendant Chicago Cubs was that in 1957 the Chicago White Sox and New York Yankees of the American League and two of eight National League ball clubs situated their respective bullpens in areas off the

playing field. We do not believe this to be a correct appraisal of the evidence offered by plaintiff. Relative to the issue of negligence, plaintiff offered the following: (1) that protective screens are positioned in front of both the first baseman and pitcher during batting practice as more than one ball is simultaneously being played; (2) that protective plastic helmets were worn by some, if not all, batters in the National League in 1957; (3) that Wrigley Field has remained substantially unchanged since its construction in 1916; (4) that the ball in question struck the plaintiff on the fly from his left while he was, at the same moment, looking to his right at the pitcher and batter in the game; (5) that a baseball is a hard ball, oft times thrown at speeds near ninety miles per hour, by a pitcher, from a point sixty feet, six inches away from its intended destination; (6) that pitchers pitching in the bullpen, whether by direction of the team manager or of their own volition, is not an abnormal occurrence during a ball game; (7) that when a pitcher is having a bad year he attempts to correct his pitching rhythm, and he may also possibly experiment by throwing new pitches in practice; (8) that pitchers warming up in the bullpen are eventually throwing as hard as they would in the game itself; (9) that plaintiff was not, as a result of the focus of his attention on the game in progress, in a position to see the ball that struck him; (10) that the defendant Rush, had thrown "wild pitches" during warm up sessions on prior occasions; and (11) that no protective screening was provided by the defendant Chicago Cubs in the area in proximity to said bullpen.

██ ██ Admittedly, defendant Chicago Cubs is correct in contending that evidence to the effect that another method was used by others in performing a certain task does not, of itself, establish negligence. Watts v. Bacon & Van Buskirk Glass Co., 18 Ill2d 226, 163 NE2d 425 (1959), Rotche v. Buick Motor Co., 358 Ill 507, 193

NE 529 (1934), Turner v. Chicago Housing Authority, 11 Ill App2d 160, 136 NE2d 543 (1956), Peterson v. Feltenberger, 102 Pa Super 6, 156 A 621 (1930), Kelly v. Loft, Inc., 124 NJL 185, 11 A2d 58 (1940), Kahn v. Werbel, 4 NJ Super 184, 66 A2d 559 (1940). It must be pointed out, however, that this evidence is not the only evidence presented by plaintiff, as defendant Chicago Cubs maintains. The aforementioned evidence offered by plaintiff, though seriously questioned by opposing counsel, clearly raises triable issues of fact of sufficient credibility and probative value to warrant the court's refusal of a directed verdict in favor of defendant Chicago Cubs.

Defendant Chicago Cubs further argues that the only question raised by plaintiff as to its alleged negligence is a question of law and not fact and as such should not have been submitted for jury determination. It claims that the owner of a baseball stadium is under no duty to screen the entire baseball park area occupied by the spectators and as a matter of law, is not liable to spectators at a baseball game who are struck by baseballs. In support of this contention, defendant Chicago Cubs cites eighteen cases, all of which are clearly distinguishable from the facts of the instant case. These cases all dealt with injuries to a spectator from a batted or thrown ball that was the ball actually in play in the game or from a batted or thrown ball when no game was, in fact, in progress.

The facts here in issue evidence an entirely different situation in which the plaintiff was struck by a ball, not in play in the game, coming from his left at a time when the spectators' attentions were focused on the ball actually in play in the game, to plaintiff's right. Furthermore, defendant Chicago Cubs relies on Jones v. Alexandria Baseball Ass'n (La App), 50 So2d 93 (1951) as authority for its nonliability, yet there the court specifically attributed the plaintiff's denial of recovery

to his failure to "keep his eye on the ball," a ball that was in play it might be added. The case at bar presents factual circumstances quite different from those held applicable to the general rules concerning nonliability of ball park owners to spectators. This court cannot say, therefore, that defendant Chicago Cubs has not breached a duty as a matter of law.

 It is not the province of this court to substitute its judgment for that of a jury. Niman v. Pecatonica Livestock Exchange, Inc., 13 Ill App2d 144, 141 NE2d 327 (1957). Furthermore, the sole question presented on a defendant's motion for a directed verdict or judgment notwithstanding the verdict is whether the evidence in favor of plaintiff, admitting it to be true, together with all the legitimate conclusions drawn therefrom, fairly tends to sustain plaintiff's cause of action and thereby support the verdict of the jury. Elbers v. Standard Oil Co., 331 Ill App 207, 72 NE2d 874 (1947), Seeds v. Chicago Transit Authority, 409 Ill 566, 101 NE 2d 84 (1951). It is the opinion of this court that the evidence in favor of plaintiff, assumed to be true, together with reasonable inferences drawn therefrom, that as a matter of law, the motions for a directed verdict and judgment notwithstanding the verdict made by defendant Chicago Cubs was properly denied. We cannot say that an opposite conclusion was clearly manifest or that the jury's verdict was erroneous and unwarranted.

Defendant Chicago Cubs further argues that it was error for the court to refuse his motion for a directed verdict because plaintiff was barred from his action by the affirmative defense of assumption of risk. It contends that plaintiff, then a boy 13 years old, familiar with the game of baseball and the hazards attendant thereto, specifically requested a seat behind the Cub dugout, an area known by him to be unscreened and adjacent to the bullpen, thereby assuming the risk of the injury he incurred. Plaintiff strongly questions the

applicability of assumption of risk as a defense beyond the scope of master-servant relationships from which it originated. Defendant Chicago Cubs relies on four decisions as persuasive authority that the doctrine applies equally to contractual relationships as well and possibly any relationship whatsoever in Illinois. They are, Macabee v. Miller, 316 Ill App 157, 44 NE2d 341 (1942), Campion v. Chicago Landscape Co., 295 Ill App 225, 14 NE2d 879 (1938), Stickel v. Riverview Sharpshooters' Park Co., 159 Ill App 110, 95 NE 445 (1910), Altepeter v. Virgil State Bank, 345 Ill App 585, 104 NE2d 334 (1952).

The Macabee and Stickel cases, when analyzed, simply held that the question of assumption of risk, where a master-servant relationship did not exist, was properly submitted to the jury, as a question of fact, for their determination. The court in the Campion case, where a golfer was struck by a golf ball while playing on a public course, pronounced that the doctrine was no longer limited to master-servant relationships. This ruling, however, must be afforded little weight by this court as the pronouncement was obiter dictum, as the court there reversed a decision for the plaintiff for his failure to prove any negligence by defendant. Clearly, the question of assumption of risk was not a determinative issue. Similarly in the Altepeter case, plaintiff was barred from recovery, not because he assumed the risk, but rather because of his failure to state a cause of action. Again here, the court's discussion of the doctrine was not germane to the outcome of the case.

It is plaintiff's contention that, notwithstanding the position taken by other states, the doctrine is still strictly limited to master-servant relationships in Illinois as promulgated by this State's highest court in Shoninger Co. v. Mann, 219 Ill 242, 76 NE 354 (1906), Conrad v. Springfield Consol. Ry. Co., 240 Ill 12, 88 NE 180 (1909) and O'Rourke v. Sproul, 241 Ill 576, 89 NE 663

(1909). These cases evidence the traditional limitation placed on the application of the doctrine of assumption of risk in Illinois which its judiciary continues to adopt. Davis v. Springfield Lodge No. 158, Benev. and Protective Order of Elks, 24 Ill App2d 102, 164 NE2d 243 (1960), Hensley v. Hensley, 62 Ill App2d 252, 210 NE2d 568 (1965). Even assuming arguendo that the doctrine were applicable to other than master-servant relationships, it must be remembered that, unlike contributory negligence, it is defendant Chicago Cubs, not plaintiff, who bears the burden of proof on the issue. Moreover, after arguments had been offered by each party in support of their respective positions, it was defendant Chicago Cubs' instruction, which was accepted by the court and given to the jury on the subject.

Dean Prosser, Prosser on Torts (3rd Ed) (1964) at page 462 points out:

"Knowledge of the risk is the watchword of assumption of risk. Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself."

and at page 464:

"Even where there is knowledge and appreciation of a risk, the plaintiff may not be barred from recovery where the situation changes to introduce a new element, such as several balls in the air at one time in a baseball park."

▆▆▆ Plaintiff, in this conjunction, relies on Cincinnati Baseball Club v. Eno, 112 Ohio St 175, 147 NE 86 (1925) where plaintiff was injured by a stray batted ball during a practice session in between games of a doubleheader, at a time when several balls were in use

simultaneously. The Ohio Supreme Court reasoned in allowing recovery, that when several balls are simultaneously in play upon the field, it is impossible for the spectator to protect himself by watching the ball, for more than one ball is being batted or thrown at once. The court explained that actual game play is done at a greater distance from the spectators to minimize injury, whereas this practice was within fifteen to twenty feet away from the plaintiff. Defendant Chicago Cubs urges that this case is distinguishable on several points, to wit; (1) that the ball came from an area other than the bullpen at a time when there was no game in progress; (2) that numerous balls were in use, whereas in the instant case only two were in use; and (3) that in the Eno case the players had ample space to practice away from the grandstands unlike the instant case. We agree with defendant Chicago Cubs' contentions on these points, but have, nonetheless, made the following observations: (1) this is a case of first impression and (2) the Eno case, though distinguishable, clearly stands for the proposition that a spectator at a baseball park does not assume the risk of being hit by a baseball he does not see, when more than one ball is being used, regardless of whether the game is in progress or not. As the Ohio court said:

> "We do not think that a court should say as a matter of law that a spectator assumes the risk of every batting or throwing of the ball permitted upon the field by the management, no matter how near the grand stand, no matter how many groups were engaged in the practice, and no matter whether the batting or throwing is a part of the game itself."

The subsequent Ohio cases of Ivory v. Cincinnati Baseball Club Co., 62 Ohio App 514, 24 NE2d 837 (1930) and Hummel v. Columbus Baseball Club, 71 Ohio App 321, 49

NE2d 773 (1943) do not distinguish the Eno decision as defendant Chicago Cubs maintains. These two cases did not involve situations in which more than one ball was in use simultaneously and furthermore, do not represent decisions of equal or superior authority, being from the Appellate Court.

 Defendant Chicago Cubs next contends that the issue of assumption of risk raises a question of law, not fact, and as such it should not have been submitted to the jury. We can find no foundation to this proposition, for even if assumption of risk were made applicable to the instant case, the doctrine's underlying premise is appreciation of the danger itself, not mere knowledge of a defect or condition by which danger is created, thereby necessarily raising a question of fact for the jury. Hopkins v. Kraft Foods Co., 44 Ill App 2d 373, 194 NE2d 680 (1963), Cincinnati Baseball Club v. Eno, 112 Ohio St 175, 147 NE 86 (1925). Moreover, defendant Chicago Cubs submitted the jury instruction on assumption of risk. Having been submitted to the jury, this court will not disturb their finding in absence of manifest error.

For the above reasons, the judgment in case No. 50,-781 against defendant Chicago National League Ball Club, Inc. is affirmed, and the motion by defendant Robert Rush to dismiss the appeal in case No. 50,780 is granted.

As to appeal No. 50,780 the appeal is dismissed.

As to appeal No. 50,781 the judgment is affirmed.

BURKE and BRYANT, JJ., concur.