JACK F. RILEY, Plaintiff-Appellee and Cross-Appellant, *v.* CHICAGO COUGARS HOCKEY CLUB, INC., Defendant-Appellant.—(WORLD HOCKEY ASSOCIATION *et al.*, Defendants and Cross-Appellees.)

First District (1st Division)    Nos. 80-1686, 80-1687 cons.

Opinion filed September 28, 1981.

Robert M. Smith, Steven M. Pontikes, and Norman H. Burdick, all of Burdick & Smith, of Chicago, for appellant.

John C. Erb and Paul B. Episcope, both of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This action was brought to recover damages occasioned by the alleged negligence of defendants in failing to provide protection for

plaintiff, who was a spectator at a hockey game. The jury rendered a verdict for plaintiff and against defendant Chicago Cougars Hockey Club for $90,000. The trial court entered judgment on the verdict and Chicago Cougars Hockey Club appeals. The jury also returned verdicts in favor of defendants International Amphitheatre and World Hockey Association. The trial court entered judgment on these verdicts and plaintiff cross-appeals.

On appeal, defendant Chicago Cougars Hockey Club argues that the trial court should have found, as a matter of law, that it owed no legal duty to provide protection for spectators at its hockey games. On cross-appeal, plaintiff argues that the verdicts in favor of defendants International Amphitheatre and World Hockey Association were against the manifest weight of the evidence.

We affirm.

Defendant Chicago Cougars Hockey Club (Cougars) was a professional hockey team. Defendant International Amphitheatre (Amphitheatre) owns and operates a multi-purpose arena. Cougars leased the arena from Amphitheatre during hockey season. Defendant World Hockey Association (WHA) was a professional hockey league of which Cougars was a chartered member.

The lease between Cougars and Amphitheatre required Cougars to provide "plastic walls for crowd protection." It did not specify how high the walls should be or what part of the stands should be protected. Around the edges of the rink at ice level, Cougars erected herculite glass panels to protect spectators and to keep the puck in the rink. The herculite glass panels were higher behind the goals because most shots are aimed in that general direction. No protection was provided for balcony spectators.

On March 12, 1974, Jack Riley (plaintiff) was a spectator at a hockey game between the Cougars and the New England Whalers at the Amphitheatre. Plaintiff was seated in the first row of the balcony near one of the goals. During the third period, one of the New England Whalers took a slipshod slapshot toward the Cougars' goal. The puck deflected off one of the Cougar players' sticks and soared on an angle to the first row of the balcony. The puck struck plaintiff on the left side of his head and knocked him unconscious. Plaintiff immediately suffered a Jacksonian seizure which rendered him unable to speak and caused his hands, arms and legs to violently shake.

Mr. William Marsh, a penalty timekeeper employed by the Cougars, testified that he previously had seen pucks shot from the ice into the balcony. He believe that there had been injuries from pucks at Cougars' games but did not know whether records of such injuries were kept.

As a result of the accident, plaintiff sustained a permanent brain

lesion. To this day, he periodically experiences epileptic seizures. An expert testified that as plaintiff ages, the symptoms may increase.

The jury returned a verdict in favor of plaintiff and against Cougars in the amount of $90,000. Further, the jury returned a verdict in favor of defendants Amphitheatre and WHA and against plaintiff. Judgment was entered on these verdicts.

First, we must consider Cougars' argument that the trial court should have found, as a matter of law, that Cougars owed no legal duty to provide protection for spectators at hockey games. Illinois courts have not previously contemplated the question of what, if any, duty is owed by a hockey club to a spectator. We have, however, defined the duty owed by a baseball club to a spectator. (See *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 225 N.E.2d 83.) In *Maytnier*, the plaintiff was struck and injured by a ball thrown from the bullpen at a Chicago Cubs game. On appeal, the Chicago Cubs raised an issue similar to the issue in the case at bar. Cubs argued that it was under no duty to screen off its entire park and, as a matter of law, is not liable to spectators who are injured by baseballs. (80 Ill. App. 2d 336, 346.) The court agreed that a baseball club need not completely fence in the spectator area. It noted, however, that fencing in the most dangerous part of the grandstand does not necessarily exculpate the ball club from further liability. 80 Ill. App. 2d 336, 343.

■■ Although *Maytnier* involved an injury at a baseball game, the court's statement of the duty of care owed is relevant to the case at bar. The court said "[i]t is well established law in this State that the owner-occupier of lands is not an insurer of the safety of invitees on his premises, but he is under a duty to exercise reasonable care for their protection." *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 342, 225 N.E.2d 83.

The court in *Maytnier* stated that general rule of nonliability of ball-park owners to spectators, but declined to apply the rule because plaintiff was struck by a ball thrown from the bullpen and not in play at the game. (*Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 346-47, 225 N.E.2d 83.) We do not believe that the general nonliability rule that is usually applied in baseball cases is necessarily applicable in hockey cases, because there are fundamental differences in the way baseball and hockey are played and the dangers incident to the games. (See generally *Uline Ice, Inc. v. Sullivan* (D.C. Cir. 1950), 187 F.2d 82; *Morris v. Cleveland Hockey Club, Inc.* (1952), 157 Ohio St. 225, 105 N.E.2d 419; *James v. Rhode Island Auditorium, Inc.* (1938), 60 R.I. 405, 199 A. 293. But see *Ingersoll v. Onondaga Hockey Club, Inc.* (1935), 245 App. Div. 137, 281 N.Y. Supp. 505.) This is not to say, however, that we advocate the adoption of a general rule of liability in hockey cases. Here, the only question with which we are concerned is whether a duty of care is owed to spectators at hockey games.

Numerous jurisdictions outside of Illinois have considered the question of whether a duty of care is owed. The courts consistently have found that owners and occupiers of premises owe a duty to exercise ordinary care for the safety of spectators at hockey games. The vast majority of these courts have found a breach of that duty and allowed the plaintiffs to recover for injuries sustained. See *Uline Ice, Inc. v. Sullivan* (D.C. Cir. 1950), 187 F.2d 82; *Parsons v. National Dairy Cattle Congress* (Ia. 1979), 277 N.W.2d 620; *Schwilm v. Pennsylvania Sports* (1952), 84 Pa. D. & C. 603; *Morris v. Cleveland Hockey Club, Inc.* (1952), 157 Ohio St. 225, 105 N.E.2d 419; *Tite v. Omaha Coliseum Corp.* (1943), 144 Neb. 22, 12 N.W.2d 90; *Lemoine v. Springfield Hockey Ass'n, Inc.* (1940), 307 Mass. 102, 29 N.E.2d 716; *Thurman v. Ice Palace* (1939), 36 Cal. App. 2d 364, 97 P.2d 999; *James v. Rhode Island Auditorium, Inc.* (1938), 60 R.I. 405, 199 A. 293.

New York and Minnesota courts consistently have denied recovery for injuries received by spectators at hockey games. (See *Modec v. City of Eveleth* (1947), 224 Minn. 556, 29 N.W.2d 453; *Ingersoll v. Onondaga Hockey Club, Inc.* (1935), 245 App. Div. 137, 281 N.Y. Supp. 505; *Hammel v. Madison Square Garden Corp.* (1935), 279 N.Y. Supp. 815, 156 Misc. 311; *Rich v. Madison Square Garden Corp.* (1933), 266 N.Y. Supp. 288, 149 Misc. 123, *aff'd* (1934), 241 App. Div. 722, 270 N.Y. Supp. 915.) In these cases, the denial of recovery was predicated on the principle that spectators, with knowledge of the dangers incident to the playing of the game, assume the risk of being injured.

We note that Cougars voluntarily withdrew the defense of assumption of risk before the case was submitted to the jury. As a result, the New York and Minnesota cases are relevant only insofar as they address the issue of duty owed. In each of these cases, the court agreed that an owner or proprietor of a hockey arena owed a duty of ordinary care to spectators at hockey games. See *Modec v. City of Eveleth* (1947), 224 Minn. 556, 29 N.W.2d 453; *Ingersoll v. Onondaga Hockey Club, Inc.* (1935), 245 App. Div. 137, 281 N.Y. Supp. 505; *Hammel v. Madison Square Garden Corp.* (1933), 279 N.Y. Supp. 815, 156 Misc. 311; *Rich v. Madison Square Garden Corp.* (1933), 266 N.Y. Supp. 288, 149 Misc. 123, *aff'd* (1934), 241 App. Div. 722, 270 N.Y. Supp. 915.

■■ Cougars' contention that since injuries occurred infrequently at Cougars' games it owed no duty to its patrons is untenable. Cougars has cited no cases which support this proposition and we have found none. In our judgment, Cougars owed plaintiff a duty to exercise reasonable care for his protection.

■■ Whether the requisite care was exercised is a question of fact for the jury. (See *Sepesy v. Fuller* (1978), 59 Ill. App. 3d 56, 375 N.E.2d 180; *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 225 N.E.2d 83.) The jury's

verdict in plaintiff's favor and against Cougars is adequately supported by the evidence and should not be disturbed.

Next, we must consider whether the verdict in favor of defendant Amphitheatre was against the manifest weight of the evidence. Relying on *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 225 N.E.2d 83 and *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 415 N.E.2d 1099, plaintiff argues that Amphitheatre, like Cougars, owed plaintiff a duty of ordinary care.

■■ We do not believe that these two cases are comparable to the case at bar. Cougars leased the arena from Amphitheatre pursuant to a lease which required Cougars to provide a "plastic wall for crowd protection." No such agreement was involved in either *Maytnier* or *Duffy*. Since Cougars, by the terms of the lease, expressly agreed to take on the responsibility of protecting the crowd, we do not believe that the jury verdict in Amphitheatre's favor was against the manifest weight of the evidence. We believe that this provision effectively delegated to Cougars the responsibility for crowd protection. Therefore, we affirm the jury's finding in favor of Amphitheatre and against plaintiff.

■■ Lastly, plaintiff argues that the verdict in favor of WHA was against the manifest weight of the evidence. Having reviewed plaintiff's argument, we find that there was no rational basis for imposing a legal duty upon WHA to protect spectators at hockey games between its member teams. Therefore, we believe that the question of WHA's liability need not even have been submitted to the jury. We find no reason to disturb the jury's finding in favor of WHA and against plaintiff.

For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

Judgments affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.