BLANCA CORONEL, Plaintiff-Appellant, v. CHICAGO WHITE SOX, LTD., *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 1—90—0091

Opinion filed May 19, 1992.

Michael J. Kane and Karen A. Kerbis, both of Kane, Obbish & Propes, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, J. Kent Mathewson, Michael A. Pollard, and L. Michael Tarpey, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

On August 16, 1986, plaintiff, Blanca Coronel, attended her first Chicago White Sox baseball game at Comiskey Park, and sat in the first base "Golden Box Seats," specifically, box section 32, row E, seat 2, behind home plate, facing first base, approximately three seats away from the edge of a protective screen. During the sixth inning, when plaintiff looked down into her lap to pick up some popcorn, she was struck on the right side of her face by a line-drive, foul-tipped ball, and suffered a broken jaw.

She brought suit against defendants Chicago White Sox, Ltd., and Comiskey Park Corporation (collectively the Sox), alleging negligence:

"[(1) for their] fail[ure] to provide adequate protection from batted balls for those spectators seated in the area of the stadium most vulnerable to stray foul balls; [(2) for] fail[ure] to provide an adequate number of seats in areas screened off from the playing field; [and (3) for] fail[ure] to warn her of the likelihood that batted balls would be projected towards her and those spectators seated near her."

After the trial court granted the Sox's motion for summary judgment, plaintiff filed a motion to reconsider but that motion was denied. Plaintiff appeals.

Plaintiff claims that the Sox failed (1) to adequately protect her from, and (2) to warn her of, foul balls which they knew would be hit into the unprotected area in which she was seated. Plaintiff asserts that these are questions of fact, and thus are questions for the jury, and cannot be decided on a motion for summary judgment.

The existence of a duty is a question of law, to be determined by the court. (*Ward v. K mart Corporation* (1990), 136 Ill. 2d 132, 140; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440.) Whether or not there is a breach of a duty, however, is a question of fact, to be determined by the trier of fact. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163.

A land owner or occupier of land owes a duty of reasonable care to business invitees located on his premises. (Ill. Rev. Stat. 1987, ch. 80, par. 302; *Ward*, 136 Ill. 2d 132.) We find no exception in favor of sports facilities from this requirement. Indeed, that the owner of a baseball park owes a duty to protect spectators from injury caused by foul balls was legally recognized a full quarter century ago by our court in the case of *Maytnier v. Rush* (1967), 80 Ill. App. 2d 336, 343, where it was held that such duty does not require "a complete fencing

of the spectators present at a baseball game to protect them from stray baseballs"[;] but rather, requires a " 'screen for the most dangerous part of the grandstand.' " (*Maytnier*, 80 Ill. App. 2d at 343, quoting *Brisson v. Minneapolis Baseball & Athletic Association* (1932), 185 Minn. 507, 240 N.W. 903.) The most dangerous part of a ball park is universally recognized as the area behind home plate (*Clapman v. City of New York* (1984), 63 N.Y.2d 669, 468 N.E.2d 697, 479 N.Y.S.2d 515; *City of Atlanta & Fulton County Recreation Authority v. Merritt* (1984), 172 Ga. App. 470, 323 S.E.2d 680; *Akins v. Glens Falls City School District* (1981), 53 N.Y.2d 325, 424 N.E.2d 531, 441 N.Y.S.2d 644); and whether the sports facility *adequately* screened the most dangerous area is a question of fact for the jury. *Maytnier*, 80 Ill. App. 2d at 343.

In *Riley v. Chicago Cougars Hockey Club, Inc.* (1981), 100 Ill. App. 3d 664, the lease between the Cougars and the amphitheater where the team played its home games, required the Cougars to provide "plastic walls for crowd protection," but "did not specify how high the walls should be or what part of the stands should be protected. Around the edges of the rink at ice level, Cougars erected herculite glass panels to protect spectators and to keep the puck in the rink. The herculite glass panels were higher behind the goals because most shots are aimed in that general direction. No protection·was provided for balcony spectators." (*Riley*, 100 Ill. App. 3d at 665.) While in play, "[t]he puck deflected off one of the Cougar players' sticks and soared on an angle to the first row of the balcony [where it] struck plaintiff on the left side of his head and knocked him unconscious." (*Riley*, 100 Ill. App. 3d at 665.) The appellate court, in affirming a jury verdict in favor of the plaintiff, rejected the "Cougars' argument that the trial court should have found, as a matter of law, that Cougars owed no legal duty to provide protection for spectators at hockey games." *Riley*, 100 Ill. App. 3d at 666, citing *Maytnier*, 80 Ill. App. 2d 336, 225 N.E.2d 83.

Especially on point are *Wells v. Minneapolis Baseball & Athletic Association* (1913), 122 Minn. 327, 142 N.W. 706, and *Akins*, 53 N.Y.2d 325, 424 N.E.2d 531, 441 N.Y.S.2d 644. In *Wells*, a spectator, unfamiliar with the dangers inherent in attending a baseball game, was seated near the protective screen and was struck by a foul-tipped ball. The screen covered "about 65 feet of the center of the grand stand" and "completely covered the opening from the roof down." (*Wells*, 122 Minn. at 329, 142 N.W. at 707.) The plaintiff contended that the defendant "negligently constructed [the] screen *** of insufficient size to furnish *** protection." (*Wells*, 122 Minn. at 329, 142 N.W. at 707.) The supreme

court of Minnesota held that not only did the defendant owe a duty to protect its patrons by shielding certain seats, but also, "[w]hat precaution the ordinarily prudent person, furnishing a public amusement of this kind, should take to warn and protect the spectators from the attendant dangers of which they may be ignorant, we think a question for the jury." *Wells*, 122 Minn. at 332, 142 N.W. at 708.

*Akins* held that where an injured spectator presented no evidence that a backstop 24 feet high and 50 feet wide was inadequate, the owner was not liable for failing to provide additional screening along the baselines of its field. Citing *Maytnier*, the court stated:

"[W]e do not attempt to prescribe precisely what, as a matter of law, are the required dimensions of a baseball field backstop. Nor do we suggest that where the adequacy of the screening in terms of protecting the area behind home plate properly is put in issue, the case should not be submitted to the jury." *Akins*, 53 N.Y.2d at 331, 424 N.E.2d at 534, 441 N.Y.S.2d at 647.

Also persuasive is *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, where the plaintiff, a spectator attending a "Western Open" golf tournament, while standing near a concession stand located between two fairways, was struck by an errant golf ball and was injured. The concession stand was "placed in [an] area[ ] in which balls had regularly landed in the past, and *** the *** spectators located between the fairways [were] within range of balls likely to be hit by golfers." (*Duffy*, 92 Ill. App. 3d at 196.) The court held that the defendant owed a duty of "ordinary and reasonable care" to the plaintiff, and that "whether the standard of care required in a given case has been exercised is ordinarily a question of fact for the jury. [Citation omitted.]" *Duffy*, 92 Ill. App. 3d at 198.

■ In light of the authorities cited above, we cannot accept the suggestion advanced by the Sox that it should be they and not the jury who should determine the adequacy of the protection afforded its fans at a baseball game. (*Riley*, 100 Ill. App. 3d at 667, citing *Maytnier*, 80 Ill. App. 2d 336, 225 N.E.2d 83.) Considering the location of plaintiff's seat and the comparatively small width of the screen, a question of fact exists as to whether there was violation of the duty owed by the Sox to spectators seated in the most dangerous part of the ballpark. We note that in *Wells* the adequacy of a screen 65 feet wide, and in *Akins* the adequacy of a backstop 54 feet wide, properly put in issue, were held to be determinations to be left to the jury. Here the Sox's director of purchasing, construction and maintenance, testified in his deposition that the protective screen behind home plate was 21 feet high and 39.7 feet wide, one of the smallest in major league baseball. In discussing the sig-

nificance of evidence used to compare the screening utilized in one park to that which is commonly employed in others, cases cited by the Sox themselves state that "[w]hile customary methods do not furnish a conclusive or controlling test of negligence or justify a practice obviously laden with danger, they are nevertheless to be considered as factors of measurement of due care." (*Schentzel v. Philadelphia National League Club* (1953), 173 Pa. Super. 179, 185, 96 A.2d 181, 185; *Jones v. Three Rivers Management Corp.* (1978), 483 Pa. 75, 84, 394 A.2d 546, 550.) Accordingly, we hold that plaintiff has met the requisite burden for her case to proceed to a jury.

■ The Sox also maintain that they did not owe plaintiff a duty to warn her of the risk of being injured by foul balls because as a matter of law a land owner owes no duty to warn of an "open and obvious" danger. While case law in other jurisdictions supports this principle (see *Friedman v. Houston Sports Association* (Tex. Ct. App. 1987), 731 S.W.2d 572, 573; *Jones v. Three Rivers Management Corp.* (1978), 483 Pa. 75, 82 n.5, 394 A.2d 546, 550 n.5; *Anderson v. Kansas City Baseball Club* (Mo. 1950), 231 S.W.2d 170, 173; *Felgner v. Anderson* (1965), 375 Mich. 23, 45 n.6, 133 N.W.2d 136, 152 n.6), such is not the law in Illinois. First of all, this court, in *Maytnier,* followed the Restatement (Second) of Torts, and held that there is a duty to warn, stating:

> "It does not necessarily follow, however, that once an owner of a ballpark has provided an adequate fenced-in area for the most dangerous part of the grandstand he has thereafter exculpated himself from further liability as defendant Chicago Cubs contends. To the contrary see Restatement of the Law of Torts, 2d, 344 (1964), which states:
>
> 'A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons ..., and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> *(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.*' "

(Emphasis added.) *Maytnier,* 80 Ill. App. 2d at 343.

■ However, in support of their argument that no duty to warn exists, the Sox cite *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456. Their reliance on *Genaust,* however, is unwarranted. According

to the Sox, *Genaust* stands for the proposition that the presence of an open and obvious danger will automatically relieve a land owner from his duty of reasonable care owed to an invitee. The Sox overlook, however, that in *Ward,* our supreme court, in commenting on sections 340 and 343 of the original Restatement of Torts, stated "that an owner or occupier of land has no duty under any circumstances to protect entrants from conditions on his land of which the entrant knows and realizes the risk or which are obvious, has fallen under harsh criticism." (*Ward,* 136 Ill. 2d at 146.) The plaintiff in *Ward* sued K mart, "seeking damages for injuries he sustained when he walked into a concrete post located just outside a customer entrance." (*Ward,* 136 Ill. 2d at 135.) At issue was whether "defendant's duty to exercise reasonable care extended to the risk that one of its customers would collide with the post while leaving the store carrying a large, bulky item." (*Ward,* 136 Ill. 2d at 136.) As a preliminary matter, the court stated that besides being "relevant to whether the injured party was exercising a reasonable degree of care for his own safety," the "obviousness of a condition is also relevant to the existence of a duty on the part of defendant." (*Ward,* 136 Ill. 2d at 143.) The court then went on to caution that merely because a danger is deemed "open and obvious," a land owner's duty to warn is not necessarily negated, as the Sox contend here. The court stated:

> "This court has not recently had occasion to address the validity of the 'known' or 'obvious' risk principle. We do so now. We conclude that to the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State." (Emphasis in original.) *Ward,* 136 Ill. 2d at 145.

Still later in its opinion, the court enlarged upon its clarification of the "open and obvious" rule:

> "It must be remembered that under our Premises Liability Act [(Ill. Rev. Stat. 1985, ch. 80, par. 302)], and at least nominally under the common law, the landowner's or occupier's duty toward his invitees is always that of reasonable care. The only sound explanation for the 'open and obvious' rule must be either that the defendant in the exercise of reasonable care would not anticipate that the plaintiff would fail to notice the condition, appreciate the risk, and avoid it [citation], or perhaps that reasonable care under the circumstances would not remove the risk of injury in spite of foreseeable consequences to the

plaintiff. *But neither of these explanations justifies a per se rule that under no circumstances does the defendant's duty of reasonable care extend to conditions which may be labeled 'open and obvious' or of which the plaintiff is in some general sense 'aware.'* \*\*\* Attempting to dispose of litigation by merely invoking such relative and imprecise characterizations as 'known' or 'obvious' is certainly no adequate substitute for assessing the scope of the defendant's duty under the circumstances \*\*\*." (Emphasis added.) *Ward,* 136 Ill. 2d at 147-48.

Particularly pertinent to the facts in this case are the following comments by the *Ward* court:

"[T]he 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and of the consequences of encountering it. \*\*\*

'[I]n any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is *reason to expect that the invitee's attention will be distracted,* as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned \*\*\*.' " (Emphasis added.) *Ward,* 136 Ill. 2d at 148-49, quoting W. Keeton, Prosser & Keeton on Torts §61, at 427 (5th ed. 1984).

Thus *Ward* clearly holds that landowners cannot totally disclaim a duty owed to those rightfully on their premises merely because a danger is "open and obvious." Rather:

"[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted \*\*\* or forgetful of the condition after having momentarily encountered it. *If in fact the entrant was also guilty of negligence contributing to his injury, then that is a proper consideration under comparative negligence principles.*" (Emphasis added.) *Ward,* 136 Ill. 2d at 152.

■ The *Ward* court's concern for invitees whose attention might be distracted, or who may, after a lapse of time, forget the existence of the condition, is especially pertinent here, for it is common knowledge that at major league baseball games the attention of the specta-

tors is frequently diverted, for example, by large numbers of vendors who purvey a variety of food and drink which the fans consume on the premises while the game is in progress, as plaintiff was doing in the instant case. It is to be expected, then, that in the process of purchasing and consuming such items, the fans' distraction from the game is bound to occur. Taking into consideration the instruction that *Ward* affords, as well as *Maytnier*'s clear setting forth of a duty to warn, it would be reasonable to conclude that the Sox were under a duty to warn plaintiff of the possible dangers of being struck by a foul-tipped ball.

■■ The Sox go on to claim that they warned plaintiff on three separate occasions of the dangers inherent in watching a major league baseball game by (1) flashing a warning on the screen, (2) announcing a warning over the public address system,[1] and (3) the caveat printed on the back of the ticket stub,[2] even though the part with the warning imprinted on it was taken at the admission gate. Whether or not these warnings were adequate compliance with the Sox's duty, however, are issues for the trier of fact. Summary judgment was therefore improper.

Accordingly, for the reasons stated above, the judgment of the circuit court is reversed and this cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

HARTMAN, P.J., and DiVITO, J., concur.

---

[1]The warning is alleged to have been announced as follows:

"Also, the White Sox ask that all fans be alert and aware of thrown or batted balls. And bats that may leave the field of play and enter the seating area. The risk of injury to a spectator is greatly increased by those who do not pay attention to the play in progress. Thank you!!"

[2]The alleged warning reads as follows:

"The holder assumes all risk and danger incidental to the game of baseball, whether occurring prior to, during, or subsequent to the actual playing of the game, including specifically (but not exclusively) the danger of being injured by any object, including, without limiting the generality of the foregoing, thrown bats, and thrown or batted balls, and agrees that the participating clubs or their agents or their players, are not liable for injuries resulting from such cases."