**Brook LAWSON, a minor, By and Through her natural mother and guardian, Cheryl LAWSON, and James and Cheryl Lawson, individually, Plaintiffs and Appellants,**

v.

**SALT LAKE TRAPPERS, INC., a Utah corporation, and Salt Lake City, a municipal corporation, Defendants and Appellees.**

No. 940063.

Supreme Court of Utah.

July 12, 1995.

Rehearing Denied Sept. 19, 1995.

Edward T. Wells, Salt Lake City, for plaintiffs.

Robert H. Henderson, Robert C. Keller, Judith D. Wolferts, Salt Lake City, for defendants.

DURHAM, Justice:

This is an appeal from a summary judgment in favor of defendants in a negligence action. The parents of a child who was struck by a foul ball at a baseball game brought a negligence action against the baseball organization, the Salt Lake Trappers, and Salt Lake City Corporation. Judge Timothy R. Hanson of the Third District Court granted summary judgment in favor of defendants, and plaintiffs appeal. We affirm.

On July 4, 1991, Brook Lawson and her parents attended a Salt Lake Trappers baseball game at Derks Field in Salt Lake City. Brook was six years old and went with her parents to see a fireworks display immediately following the baseball game. The Trappers were hosting the fireworks show to promote baseball game attendance and to celebrate Independence Day.

The Lawsons purchased their tickets when they arrived at the stadium. Because they were part of a group of ten, they purchased general admission tickets that would enable their group to sit together. The Lawsons' seats were located above first base, approximately 143 feet from home plate. The seats were about halfway from the top of the stands. No protective screening blocked foul balls where the Lawsons chose to sit. The only area at Derks Field with protective screening was directly behind home plate and along portions of the first and third baselines. The Lawsons did not request seats in a screened area.

During the game, a foul ball exited the playing field and struck Brook Lawson, causing head injuries. The Lawsons sued the Trappers and Salt Lake City, alleging negligence for failure to provide adequate protection to spectators from known dangers at the playing field. In addition, Brook's parents, James and Cheryl Lawson, claimed damages for negligent infliction of emotional distress.

The trial court entered an order of summary judgment, dismissing all of the Lawsons' claims. The trial court held that being struck by a foul ball was an inherent risk of attending a baseball game, that defendants breached no duty to the Lawsons by not fencing the entire playing field, and that the Lawsons could not legally recover for negligent infliction of emotional distress under Utah law.

The Lawsons ask this court to reverse the trial court's order, arguing that (1) whether defendants breached a duty of care to Brook is a question of fact that should be tried to a jury; (2) the trial court misapplied the doctrine of assumption of risk; and (3) because James and Cheryl Lawson were within the "zone of danger" of the foul ball, their claim of negligent infliction of emotional distress should be tried to a jury.

■ Summary judgment is proper only when there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Therefore, we review the trial court's conclusions for correctness. *United Park City Mines Co. v. Greater Park City Co.*, 870 P.2d 880, 885 (Utah 1993); *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991); *Bonham v.*

*Morgan,* 788 P.2d 497, 499 (Utah 1989) (per curiam).

## I. DUTY OF CARE

The first issue in this case is whether the Trappers or Salt Lake City owed a duty of care to the Lawsons. In *Hamilton v. Salt Lake City Corp.,* 120 Utah 647, 237 P.2d 841, 843 (Utah 1951), this court held that a baseball facility "must use reasonable care in providing a reasonably safe place for its patrons." Since that case was decided, the standard for "reasonable care" for a baseball park has been extensively explored in case law from other jurisdictions.

■ The majority rule is that an owner of a baseball stadium has a duty to screen the most dangerous part of the stadium and to provide screened seats to as many spectators as may reasonably be expected to request them on an ordinary occasion. *Bellezzo v. State,* 174 Ariz. 548, 851 P.2d 847, 852 (Ct. App.1992); *Yates v. Chicago Nat'l League Ball Club, Inc.,* 230 Ill.App.3d 472, 172 Ill. Dec. 209, 217, 595 N.E.2d 570, 578 (1992) (acknowledging majority rule); *Akins v. Glens Falls City Sch. Dist.,* 53 N.Y.2d 325, 441 N.Y.S.2d 644, 646, 424 N.E.2d 531, 533 (1981); Walter T. Champion, Jr., *"At the Ol' Ball Game" and Beyond: Spectators and the Potential for Liability,* 14 Am.J. of Trial Advoc. 495, 500 (1990) [hereinafter Champion]. *See generally* James L. Rigelhaupt, Jr., *Liability to Spectator at Baseball Game Who Is Hit by Ball or Injured as Result of Other Hazards of Game,* 91 A.L.R.3d 24, 39–42 (1979) [hereinafter Rigelhaupt]. The area behind home plate is generally conceded to be the most dangerous area of a ball park. *Coronel v. Chicago White Sox, Ltd.,* 230 Ill. App.3d 734, 171 Ill.Dec. 917, 919, 595 N.E.2d 45, 47 (1992); *Bellezzo,* 851 P.2d at 852; *Clapman v. City of New York,* 63 N.Y.2d 669, 479 N.Y.S.2d 515, 516, 468 N.E.2d 697, 698 (1984); *Akins,* 441 N.Y.S.2d at 646, 424 N.E.2d at 533. Other jurisdictions have followed variations of the majority rule. *See, e.g., Coronel,* 171 Ill.Dec. at 919, 595 N.E.2d at 47 (finding duty to screen only most dangerous area of ball park); *Rudnick v. Golden West Broadcasters,* 156 Cal.App.3d 793, 202 Cal.Rptr. 900, 901–02 (1984) (finding duty to provide screened seats to as many as would reasonably request such seats irrespective of owner's decision to screen most dangerous area); *Friedman v. Houston Sports Ass'n,* 731 S.W.2d 572, 574 (Tex.Ct.App.1987) (finding duty to provide screened seats for all those desiring them).

We are persuaded that the policy and rationale of the majority rule are sound. The majority rule insures that those spectators desiring protection from foul balls will be accommodated and that seats in the most dangerous area of the stadium will be safe. At the same time, the majority rule recognizes baseball tradition and spectator preference by not requiring owners to screen the entire stadium. Champion, at 500; Rigelhaupt, at 39–42. Thus, we hold that the Trappers had a duty to screen the area behind home plate and to provide screened seats to as many spectators as would normally request such seats on an ordinary occasion.

■ We next examine defendants' compliance with this duty. Under the majority rule, their first obligation was to provide protective screening behind home plate. *Bellezzo,* 851 P.2d at 852; *Coronel,* 171 Ill. Dec. at 919, 595 N.E.2d at 47; *Akins,* 441 N.Y.S.2d at 646, 424 N.E.2d at 533. The undisputed facts demonstrate that defendants provided protective screening behind home plate and partway along the first and third baselines.

In *Akins,* the plaintiff was struck by a foul ball while standing near the third baseline, ten to fifteen feet from the end of the backstop and sixty feet from home plate. 441 N.Y.S.2d at 645, 424 N.E.2d at 532. The plaintiff presented no evidence that the protective screening (twenty-four feet high and fifty feet wide) was inadequate to protect those seated behind home plate. *Id.* at 647, 424 N.E.2d at 534. *Akins* held in favor of the defendant ballpark and noted, "[H]aving provided adequate protection for those spectators seated, or standing, in the area behind home plate, liability may not be imposed ... for failing to provide additional screening along the baselines of its field where the risk

of being struck by a stray ball was considerably less." *Id.*

Like the plaintiff in *Akins,* the Lawsons have not proffered any evidence that the screening at Derks Field was inadequate in terms of protecting spectators behind home plate. In fact, the record is silent as to the dimensions of the screen. Similarly, while the Lawsons allege that the screening failed to comply with "industry standards," they have not shown what the industry standards for protective screening are or how they differ from the screening provided by defendants. In the absence of such a showing, we agree with the trial court's conclusion that defendants complied as a matter of law with their initial duty of screening the area behind home plate.

■ Defendants' second duty was to provide protected seats to as many patrons as would normally request such seats on an ordinary occasion. *Bellezzo,* 851 P.2d at 852; *Rudnick,* 202 Cal.Rptr. at 901; *Akins,* 441 N.Y.S.2d at 646, 424 N.E.2d at 533. The Lawsons have failed to demonstrate any breach of this duty. In fact, they do not address this issue. They did not request screened seating when they purchased their tickets, nor did they request to change seats after arriving in the unscreened grandstand area. Rather, the Lawsons chose to sit in an area that would accommodate their group. Because the Lawsons do not raise an issue of material fact concerning defendants' duty to provide a reasonable number of screened seats, the trial court correctly granted summary judgment. *See Massey v. Utah Power & Light,* 609 P.2d 937, 938 (Utah 1980) (holding that unsupported contentions do not preclude summary judgment); *see also Clapman,* 479 N.Y.S.2d at 516, 468 N.E.2d at 698 (affirming summary judgment in favor of defendant ballpark because plaintiff failed to raise any issue of material fact concerning adequacy of screening and sufficiency of seating behind home plate).

## II. ASSUMPTION OF RISK

■ As this court has previously noted, being struck by a foul ball is " 'one of the natural risks assumed by spectators attending professional games.' " *Hamilton,* 237

P.2d at 843 (quoting *Quinn v. Recreation Park Ass'n,* 3 Cal.2d 725, 46 P.2d 144, 146 (1935)). This court has described assumption of risk in two ways:

> In its primary sense, it is an alternative expression for the proposition that defendant was not negligent, that is, there was no duty owed or there was no breach of an existing duty. In its secondary sense, assumption of risk is an affirmative defense to an established breach of duty and as such is a phase of contributory negligence.

*Jacobsen Constr. Co. v. Structo–Lite Eng'g, Inc.,* 619 P.2d 306, 310 (Utah 1980). Because defendants did not breach any duty owed to the Lawsons, we find that the trial court properly applied the doctrine of assumption of risk, and we reject the Lawsons' claim to the contrary.

## III. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ The final issue in this case is whether James and Cheryl Lawson have a claim for negligent infliction of emotional distress. This action requires that the plaintiff feared physical injury or peril. *Hansen v. Sea Ray Boats, Inc.,* 830 P.2d 236, 240 (Utah 1992). In addition, the plaintiff must experience either physical or mental symptoms as a result of the incident. *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 974–75 (Utah 1993).

The undisputed facts demonstrate that James and Cheryl Lawson did not actually witness the event in which their daughter was hit. Because they did not even see the foul ball, they cannot claim that the accident caused emotional distress from fear of injury; the speed of the accident actually prevented any apprehension or anticipation of harm. Furthermore, even if James and Cheryl Lawson had anticipated the harm, they do not proffer any evidence indicating that they experienced severe mental illness as a result of the incident. *See Hansen,* 858 P.2d at 975 (holding emotional distress suffered must be severe and not trivial). Thus, as a matter of law, the Lawsons do not have a claim for negligent infliction of emotional distress. Accordingly, the trial court properly granted

defendants' motion for summary judgment on this point.

Having rejected all of the Lawsons' arguments, we affirm the trial court's order.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE, J., concur.

RUSSON, J., concurs in the result.